Court of Common Pleas for Cuyahoga county.

BABIN V. ROYAL INDEMNITY CO.

Decided June 16, 1930.

*Thompson, Hine & Flory,* for plaintiff.
*J. M. Andries,* for plaintiff.

KRAMER, J.

This matter is before the court on motion of plaintiff's counsel, Thompson, Hine & Flory asking that the court declare it to have a lien against the judgment rendered in this action for the amount due counsel for services rendered in this cause.

In the original action plaintiff recovered a judgment against Royal Indemnity Company by the consideration of this court for the sum of two thousand two hundred eighty dollars, plus interest and costs. To the judgment of this court defendant filed its petition in error in the Court of Appeals and plaintiff filed a cross-petition in error. The judgment of this court was subsequently affirmed by the Court of Appeals. After the affirmance of the judgment, counsel for plaintiff notified defendant that it claimed a lien on the judgment to the extent of five hundred dollars due it for services rendered in obtaining the judgment and shortly thereafter filed the motion which is now before the court, asking that it be declared to have a lien on the judgment to the extent of five hundred dol-

lars and that this lien be certified on the docket of the cause.

It appears that after the judgment was originally rendered by this court certain causes of action accrued in favor of defendant Royal Indemnity Company against plaintiff Jacob Babin and that defendant subsequently recovered several judgments against plaintiff, the aggregate amount of which judgments exceeded the amount of plaintiff's judgment herein against defendant. After having been notified that counsel for plaintiff claimed a lien against the judment rendered herein, and after the filing of the motion of plaintiff's counsel, plaintiff executed and delivered to defendant a separate satisfaction of the judgment in the within case and defendant caused the same to be copied upon the docket. Whether any actual payment was made by defendant to plaintiff does not appear, but probably the satisfaction was given to effect a partial set-off. Whether or not any payment was actually made is unimportant.

There is no claim made that plaintiff's attorneys had a contingent fee contract with plaintiff or that there was any express agreement for their fees. Plaintiff's attorneys seek to recover on the basis of *quantum meruit*. It is conceded by defendant that the amount sought by plaintiff's counsel is a reasonable charge for the services rendered by them in the prosecution of the within case.

The motion of counsel asking that they be declared to have a lien on the judgment to the extent of its charge for services rendered in this particular case raises a question of which there was formerly some doubt, due probably to some *dicta* in the case of *Diehl* v. *Friester*, 37 O. S., 473, where the court said at page 477:

"Although an attorney may contribute his skill and service in obtaining a judgment for his client, he has, in this state, no lien on such judgment for his fees, where there is no agreement for such lien known to the judgment debtor, in the sense that such judgment debtor may not effectually satisfy such judgment by payment of the amount thereof to the judgment creditor; nor do we doubt the right of parties to compromise any pending suit, in

opposition to the wish of their attorneys. But, on the other hand, an attorney may have a claim upon the fruits of a judgment or decree which he has assisted in obtaining, or upon a sum of money which he has collected, and under some circumstances courts will aid him in securing or maintaining such claim. Thus he will be protected in retaining his fee out of money which he has collected for his client. *Longworth* v. *Handy,* 2 Handy, 75. He will be protected in his claim as attorney on a fund in the hands of a receiver (*Olds* v. *Tucker*, 35 Ohio St., 581), or in court.. *Ingham* v. *Lindemann, ante,* 218. This protection, it will be seen from the cases cited, will be afforded in many other cases. And why should not Hunter & Mallory be protected to the same extent as if Diehl had paid the money into court? The motion for set-off was, as we have seen, an appeal to the equitable power of the court, and where such appeal is made, the court looks not merely to the form the transaction is made to assume, but to its substance. The attorneys contributed, undoubtedly, in obtaining the judgment."

Notwithstanding the fact that the court says that an attorney has no lien on such judgment for his fees, the claim of the attorneys for fees was protected and the motion for set-off was denied, thus in effect giving to the attorneys a lien on the judgment, or at least a right against the judgment, and the court refused to allow the defendant to set off its judgment against plaintiff against the judgment rendered in favor of plaintiff against defendant to the prejudice of the claim of the attorneys for fees. Syllabus 2 of the case is as follows:

"A motion that one judgment be set-off against another is an appeal to the equitable power of the court, to be granted or refused upon consideration of all the facts; and in granting such motion, the claim of the attorneys for fees will be respected, whenever it appears to be right, in view of the facts, that this should be done."

In this case the court points out that the record does not show whether or not there was any agreement between Friester and his attorneys as to the amount of the fee and its lien and the holding above is made regardless of this fact.

The apparent confusion arising out of the *dicta* in *Diehl*

v. *Friester* was dissolved by later cases. In the case of *Walcutt* v. *Huling,* 5 Ohio App., 326 (affirming *Huling* v. *Columbus,* 13 O. N. P. (N. S.), 409), affirmed without opinion in 92 O. S., 518, the court said at page 330:

"The decisions of our Supreme Court do not in words hold that an attorney has a lien upon a judgment which was secured through his efforts, but we are unable to reconcile certain decisions of our Supreme Court except upon the theory that that court recognizes the existence of such a lien."

The court also quoted with approval from *Hanna* v. *Island Coal Company,* 51 Am. St. Rep., 257 and 258, as follows:

" 'Besides the general or retaining lien which an attorney has upon papers, books, documents, money and other property in his possession, to secure his professional compensation he has what is called, for want of a better name, a particular or charging lien upon a judgment procured by him for his client. This right to recover for his services in obtaining a judgment for his client is called a lien, in the broad sense of the term, although it does not depend upon possession, but rests merely on the equity of the attorney to be paid his fees and disbursements out of the judgment which he has obtained. It is considered reasonable and proper that an attorney, by whose labor and at whose expense a judgment has been obtained for his client, should have an interest in that judgment which the law will regard and protect. An eminent judge once said:

" 'That the convenience, good sense, and justice of the thing required it.' So, while we talk of an attorney having a lien upon a judgment, it is, in fact, only a claim or right to ask for the intervention of the court for his protection, when, having obtained a judgment for his client, he finds that there is a probability of the client depriving him of his interest in the fruits of that judgment. The lien of an attorney upon a judgment is an equitable lien, and is upheld simply upon the theory that his services and skill produced it. This seems to be the only ground upon which this lien has ever been put. Little is known of its origin, but the principle has long been recognized that a 'party should not run away with the fruits of the cause without satisfying the legal demands of his attorney by whose industry, and, in many instances, at whose expense, those fruits are obtained.' "

In the Walcutt case there was no express agreement as to the amount of fees nor was there any agreement to the effect that the attorneys should have a lien or claim against any judgment. The amount of recovery was based on *quantum meruit.*

In *Cohen* v. *Goldberger,* 109 O. S., 22, the lien of an attorney is recognized. The syllabus states the rule as follows:

"The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund."

It is true that in the case of *Roberts* v. *Montgomery,* 115 O. S., 502, which likewise involved a contingent fee, the court protected the rights of the attorney, but in no way did the court indicate that such protection would be denied if there had been no contingent fee agreement.

In the case of *Truman* v. *Machinery Company,* 11 Ohio App., 220, the attorney was allowed fees out of the fund produced by litigation, though no actual agreement for such participation in the fund existed with the client.

The case of *Hyers* v. *Western and Southern Life Insurance Company,* Ohio Law Bulletin and Reporter, February 10, 1930, page 96, has not been overlooked.. The decision of the Court of Appeals in that case is contrary to the conclusion reached herein, but it is felt that the authorities cited above, and particularly the rule as stated in the syllabus of *Cohen* v. *Goldberger,* are controlling and justify a holding that plaintiff's counsel should be declared to have a lien on the judgment secured through their efforts notwithstanding the fact that no express agreement existed as to the payment of their fees. The attorney is entitled to be protected not by reason of his agreement, but "on the equity of such attorney to be paid out of the judgment by him obtained and on the theory that his services and skill created the fund." *Cohen* v. *Goldberger, supra.* As the United States Supreme Court

said in the case of *Winton* v. *Amos*, 255 U. S., 373, at 393:

"In either case there is the same curious analogy to the salvage services of the maritime law."

In addition to the Ohio authorities the conclusion reached is sustained by text writers and decisions in numerous other states. See 2 R. C. L., 1079, 6 C. J., 766, and authorities cited therein.

The defendant did not raise any procedural question or deny the right of the court to determine the question involved by motion, and the defendant may be said to have waived objection to the method of procedure. However, it is felt that the issue may be properly raised by the filing of the motion as was done in the instant case. It is a general rule that a court retains jurisdiction over its judgments until they are satisfied. From this it follows that the claim of a lien upon such judgment may be protected by motion. 6 Corpus Juris, 794.

"Until a judgment is fully executed, the court retains jurisdiction of the subject matter and the parties for the purpose of hearing any motion affecting such judgment, and if the attorney desires to have his lien established and declared against such judgment, he may apply to the court for that purpose. Thus in some jurisdictions the attorney's lien upon a judgment may be established and enforced upon an application to the court in the case wherein the judgment was rendered, and although it is sometimes held that this lien may be enforced in an independent action by the attorney, yet ordinarily a motion in the cause is the proper remedy."

The same conclusion is reached after an analysis of many decisions in a monograph entitled "Lien of Attorneys," 5 Am. St. Rep., 251, at page 271:

"An attorney's lien is enforceable through the control the courts have of their judgments and records, and by means of their own process: *Goodrich* v. *McDonald*, 112 N. Y., 157; *Yourie* v. *Nelson*, 1 Tenn. Ch., 614. If an attorney applies to the court to protect his lien, the court will prevent money from being paid over until the demand is satisfied; and if the judgment debtor pays a judgment to the judgment creditors, after notice of the

lien, the court may require him to pay it again, to the attorney."

In 1 Jones on Liens, 3d Ed., 245, it is stated:

"The plaintiff's attorney may also be protected upon his application to the court for a rule restraining the judgment debtor from paying the money to the plaintiff until the attorney's lien is satisfied.

"Where a decree has been entered for the payment of money to a complainant, and his solicitor has given the defendant notice that he claims a lien on the moneys decreed to be paid, and this notice is disregarded by the defendant, the latter may, on an order of the court to show cause, be required to pay to the solicitor such amount as he should establish a lien for upon a reference made by the court." (Citing *Barnes* v. *Taylor,* 30 N. J. Eq., 467.)

"An application to the court by an attorney to protect his lien upon a judgment is addressed to the discretion of the court. (Citations.) The right of the attorney to claim the lien should be clear to justify the court's interference.

"In some cases the courts, after declaring the lien, have directed a reference to a master to determine the proper amount of the attorney's charges, but perhaps the better practice is to declare the lien, and leave the attorney to enforce his claim by an appropriate proceeding against his client."

The motion herein is therefore granted.

Defendant excepts.