[Cite as *State ex rel. Atty. Gen. v. Lager*, 2020-Ohio-3260.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ohio Attorney General, | : | |
| Plaintiff-Appellee, | : | No. 19AP-265 |
| v. | : | (C.P.C. No. 18CV-7094) |
| William Lager et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees, | : | |
| (City of Dayton Public Schools et al., | : | |
| Proposed Intervenors-Appellants). | : | |
| | : | |
| State ex rel. Ohio Attorney General, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 19AP-330 |
| | : | (C.P.C. No. 18CV-7094) |
| William Lager et al., | : | |
| Defendants-Appellees, | : | (REGULAR CALENDAR) |
| (Woodridge Local Schools et al., | : | |
| Proposed Intervenors-Appellants). | : | |

D E C I S I O N

Rendered on June 9, 2020

**On brief:** *Dave Yost*, Attorney General, *Todd R. Marti, Reid T. Caryer, and Mia Meucci Yaniko*, for appellee Ohio Attorney General. **Argued:** *Todd R. Marti.*

**On brief:** *McNees Wallace & Nurick LLC, Karl H. Schneider, Todd A. Long, and David M. Marcus*, for appellees William Lager et al. **Argued:** *Karl H. Schneider.*

**On brief:** *Cohen Rosenthal & Kramer LLP, Ellen M. Kramer, James B. Rosenthal, and Joshua R. Cohen*, for proposed intervenors-appellants, City of Dayton Public Schools et al. **Argued:** *Ellen M. Kramer.*

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Proposed intervenors-appellants, City of Dayton Public Schools, Toledo City School District, Northern Local School District, Woodridge Local Schools, Cuyahoga Falls City School District, and Springfield City School District appeal from a judgment of the Franklin County Court of Common Pleas denying their amended motion to intervene in this action.[1] Because appellants have not demonstrated that the trial court abused its discretion in denying their motion, we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} The Electronic Classroom of Tomorrow ("ECOT") was an Ohio community school. Administrative proceedings determined that ECOT was overpaid $79,646,748 in public monies because it failed to meet statutory requirements that it document the hours of instruction for which it had billed the Ohio Department of Education. *Electronic Classroom of Tomorrow v. Ohio Dept. of Edn.*, 154 Ohio St.3d 584, 2018-Ohio-3126. This debt rendered ECOT insolvent and a special master was appointed to preserve/liquidate ECOT's assets. Among ECOT'S assets are potential claims against individuals owing ECOT fiduciary duties and certain private for-profit entities that managed significant portions of ECOT's operations or provided circular materials or marketing, media production, communication and/or public relation services. The ECOT assets also include potential claims against an insurance company that provided surety bonds to certain fiduciaries

---

[1] City of Dayton Public Schools, Toledo City School District, and Northern Local School District filed a notice of appeal initiating case No. 19AP-265. Woodridge Local Schools, Cuyahoga Falls City School District and Springfield City School District filed a separate appeal–case No. 19AP-330. These appeals have been consolidated.

and/or entities. The judge presiding over the liquidation proceeding ordered that these claims be assigned to the state for prosecution, with any proceeds to be distributed among ECOT's creditors under his direction. (May 1, 2019 Compl. at ¶ 45 and Ex. 3 thereto.)[2] In turn, on August 21, 2018, the state, acting through the Ohio Attorney General, filed a complaint on ECOT's behalf to pursue these claims.

{¶ 3} On January 29, 2019, appellants filed an amended motion to intervene in this action pursuant to Civ.R. 24(A) and (B). Appellee, the attorney general, as well as the defendants-appellees, Altair Learning Management I, Inc., IQ Innovations, LLC, and William Lager, opposed appellants' amended motion to intervene. On February 14, 2019, the attorney general also filed a motion for leave to file an amended complaint to assert additional claims and add additional defendants to the action. In a decision dated April 22, 2019, the trial court granted the attorney general's motion for leave to file an amended complaint and denied appellants' amended motion to intervene. With respect to appellants' motion for intervention as of right pursuant to Civ.R. 24(A), the trial court determined that appellants failed to demonstrate that the attorney general would not adequately represent their interests. The trial court further determined that intervention pursuant to Civ.R. 24(B) (permissive intervention) was not warranted because appellants did not present common issues of law or fact and because intervention would cause undue delay in the proceedings. Appellants appeal assigning the following errors:

> 1. The trial court erred as a matter of law in refusing to permit City of Dayton Public Schools, Toledo City School District, Northern Local School District, Woodridge Local Schools, Cuyahoga Falls City School District, and Springfield City School District (the "School Districts") to intervene as of right pursuant to Ohio Rule of Civil Procedure 24(A)(2).
>
> 2. In the alternative, the trial court abused its discretion in refusing to permit the School Districts to intervene as of right pursuant to Ohio Rule of Civil Procedure 24(A)(2).

---

[2] We also note that pursuant to R.C. 3314.074(A), "[i]f any community school established under this chapter permanently closes and ceases its operation as a community school, the assets of that school shall be distributed first to the retirement funds of employees of the school, employees of the school, and private creditors who are owed compensation, and then any remaining funds shall be paid to the department of education for redistribution to the school districts in which the students who were enrolled in the school at the time it ceased operation were entitled to attend school under section 3313.64 or 3313.65 of the Revised Code. The amount distributed to each school district shall be proportional to the district's share of the total enrollment in the community school."

3. The trial court abused its discretion in refusing to the School Districts to permissively intervene pursuant to Ohio Rule of Civil Procedure 24(B).

## II. LEGAL ANALYSIS

### A. Standard of Review

{¶ 4} The appellants challenge the trial court's denial of their amended motion to intervene as of right pursuant to Civ.R. 24(A), and alternatively to permissively intervene pursuant to Civ.R. 24(B). Appellants agree that the denial of permissive intervention is reviewed for abuse of discretion. (Appellant's Brief at 11.) However, appellants contend in their first assignment of error that their amended motion to intervene as of right is subject to a de novo standard of review. We disagree.

{¶ 5} It is well-established that an appellate court reviews a trial court's decision to deny both a motion to intervene pursuant to Civ.R. 24(A) (intervention as of right) and Civ.R. 24(B) (permissive intervention) for abuse of discretion. *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41; *Petty v. Kroger Food & Pharmacy*, 10th Dist. No. 05AP-592, 2005-Ohio-6641, ¶ 7 (Civ.R. 24(A) motion); *State ex rel. Montgomery v. Columbus*, 10th Dist. No. 02AP-963, 2003-Ohio-2658, ¶ 14. The phrase "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, courts construe Civ.R. 24 liberally to permit intervention. *Merrill* at ¶ 41, citing *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*, 80 Ohio St.3d 182, 184 (1997).

### B. Intervention as of Right–Civ.R. 24(A)

{¶ 6} "In order for an applicant to intervene as a matter of right under Civ.R. 24(A), either a statute of this state must confer an unconditional right to intervene upon the applicant, or the applicant must: (1) claim an interest relating to the property or transaction that is the subject of the action; (2) be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect his or her interest; (3) demonstrate that his or her interest is not adequately represented by the existing parties; and (4) move to intervene in a timely manner. Failure to satisfy any one of the elements in Civ.R. 24(A) will result in the denial of the motion to intervene." *Petty* at ¶ 8,

citing *Fairview Gen. Hosp. v. Fletcher*, 69 Ohio App.3d 827, 831 (10th Dist.1990). Although intervention as a matter of right is to be liberally construed in favor of the putative intervenor, the intervenor must demonstrate all of the required elements set forth in Civ.R. 24(A). *Snider Interests, L.L.C. v. Cannata*, 8th Dist. No. 103659, 2017-Ohio-85, ¶ 15.

{¶ 7} Appellants do not point to any statute that provides for an unconditional right to intervene in this action. Therefore, appellants must satisfy all four of the above enumerated elements of Civ.R. 24(A) in order for intervention as of right to be appropriate. *Petty* at ¶ 9. A government agency charged by law with representing the interest of a proposed intervenor will usually be deemed adequate to represent the proposed intervenor's interest. *Montgomery* at ¶ 26. This presumption may be overcome by demonstrating adversity of interest, collusion, or nonfeasance. *Id.* at ¶ 25.

{¶ 8} In the case at bar, the trial court's denial of appellants' amended motion to intervene as a matter of right was based on its determination that appellants failed to establish that their interest in the property that is the subject of the action (monies sought to be recovered on ECOT's behalf) is not adequately represented by the attorney general. Given its finding that appellants failed to establish this element, the trial court found it unnecessary to address the remaining requirements of Civ.R. 24(A).[3]

{¶ 9} In their first and second assignments of error, appellants contend that the trial court erred in denying their amended motion to intervene as a matter of right pursuant to Civ.R. 24(A). Appellants argue that they presented non-speculative evidence that the attorney general would not adequately represent their interest. In support of their argument, appellants contend that they overcame the presumption of adequate representation by the attorney general by demonstrating adversity of interest and nonfeasance based upon the following allegations:

---

[3] The trial court denied appellants' amended motion to intervene as of right based solely on its finding that the appellants failed to show that the attorney general would not adequately represent their interest. Although the attorney general and the defendants-appellees also alleged that appellants lacked standing to intervene and that any interest appellants have in this litigation is contingent and too remote to warrant intervention, the trial court did not address those issues. The trial court did not make any findings with respect to appellants' standing or the nature of their interest in the subject of this litigation. For purposes of deciding the issue before us, we assume, without deciding, that appellants did not need to establish standing to assert a claim in order to seek intervention under Civ.R. 24(A) and (B) and that they have "an interest relating to the property or transaction that is the subject of the action" as required by Civ.R. 24(A).

1. The attorney general and/or his predecessor took a more aggressive litigation strategy in two earlier cases involving failed charter schools;

2. The attorney general and/or his predecessor took a less aggressive litigation strategy in another case involving a charter school and a charter school management company in which he was representing the Ohio Department of Education;

3. The attorney general has in the past spoken at ECOT commencement events and has previously received political contributions from two of the individual defendants in this case;

4. The attorney general and/or his predecessor have not actively prosecuted this case as evidenced by his delay in amending the complaint to add a new defendant and new claims and by not aggressively pursuing discovery; and,

5. The attorney general actively opposed appellants' motion to intervene.

Appellants rely on the same allegations in challenging the trial court's finding that the attorney general and appellants have the same ultimate goal–to recover the maximum amount of money possible on ECOT's behalf.  Lastly, appellants argue that these allegations demonstrate that the attorney general has a conflict of interest and that his representation in this case violates the Rules of Professional Conduct.

{¶ 10}  In response to appellants' allegations, the attorney general contends that there are significant factual differences in the other cases involving charter schools cited by appellants and that these factual differences explain the differences in the claims asserted and remedies sought by the attorney general.  The attorney general argues that appellants' comparison of cases is nothing more than a conclusory critique of litigation tactics without any analysis of these differing facts and circumstances.  The attorney general further contends that appellants have presented nothing to show that the trial court was wrong in concluding that his office and appellants share the same ultimate goal.  Quite the contrary, the attorney general asserts that the amended complaint and appellants' proposed complaint attached to their amended motion to intervene demonstrate that both his office and appellants share the same ultimate goal–to recover the maximum amount of money on ECOT's behalf.  To rebut appellants' general assertion that he is too friendly to charter

schools and/or the individual defendants in this case, the attorney general points out that since 2011 the attorney general's office has:

> 1. Obtained $8,224,776.30 in judgments on audit findings related to charter schools;
>
> 2. Pursued, and continues to pursue, another $5,010,999 in judgments on charter school related audit findings;
>
> 3. Obtained or is seeking an additional $53,330,730.90 in judgments against persons/entities who had no audit findings issued against them, but violated common law and statutory duties in connection with charter schools;
>
> 4. Aggressively sought to preserve charter school-related debts in bankruptcy proceedings;
>
> 5. Successfully prosecuted multiple administrative proceedings to revoke professional licenses based on misappropriations of charter school funds; and,
>
> 6. Taken an aggressive posture in this case seeking very substantial damages against defendants-appellees, including individual defendants that have previously made political contributions.

{¶ 11} As previously noted, a government agency charged by law with representing the interest of a proposed intervenor is presumed to adequately represent the proposed intervenor's interest. *Montgomery*, 2003-Ohio-2658, at ¶ 26. To rebut this presumption, appellants had the burden to show adversity of interest, collusion, or nonfeasance. *Id.* at ¶ 25. Appellants did not allege collusion. Therefore, appellants had to demonstrate adversity of interest or nonfeasance. The trial court expressly considered the evidence presented by appellants and the attorney general and concluded that appellants had not satisfied their burden to show adversity of interest or nonfeasance. We fail to see how the trial court abused its discretion in reaching this conclusion.

{¶ 12} Although appellants are clearly critical of the attorney general's litigation strategy in this case, a mere disagreement over litigation strategy does not establish inadequate representation. *Id.* at ¶ 24. The trial court could reasonably conclude that appellants' comparison of claims and remedies sought in this case to those asserted by the attorney general in other cases involving failed charter schools did not demonstrate

nonfeasance. As noted by the attorney general and the trial court, the facts and circumstances in these cases are different and appellants provide only conclusory criticism without any analysis of these factual differences. In addition, appellants' assertion that the attorney general should have moved more aggressively with discovery and should have asserted certain claims against certain defendants in the original complaint, rather than in the subsequently filed amended complaint, did not require the trial court to find nonfeasance. Quite the contrary, it demonstrates the attorney general's intent to pursue the very claims appellants want asserted.

{¶ 13} Nor does appellants' contention that the attorney general's past support for charter schools demonstrates an inability to represent appellants' interests in this case. Other evidence presented to the trial court supports the attorney general's assertion that he has taken aggressive action in cases involving charter schools when justified. The trial court could consider the actions undertaken by the attorney general to recover public monies by pursuing claims involving other failed charter schools, and/or by asserting claims against those who violated fiduciary and/or statutory duties to charter schools, in assessing whether the attorney general shares a common interest with appellants in this case and whether he would adequately represent appellants' interests. We also note the trial court expressly found that the attorney general and appellants share the same ultimate goal–"to recover the maximum amount of money allegedly owed from the defendants under the law." (Apr. 22, 2019 Decision & Entry at 6.) In reaching that conclusion, the trial court reviewed the claims asserted in the attorney general's amended complaint and those contained in appellants' proposed complaint–noting that appellants conceded "the claims proposed by the School Districts overlap with those asserted by [the State] in many respects." *Id.* Given the evidence before the trial court, appellants have not shown that the trial court abused its discretion in finding that the attorney general can adequately represent appellants' interest in this case–particularly in view of the presumption of adequate representation afforded to a government agency. *Montgomery* at ¶ 24. Therefore, the trial court did not err in denying appellants' motion to intervene pursuant to

Civ.R. 24(A). For these reasons, we overrule appellants' first and second assignments of error.[4]

{¶ 14} In appellants' third assignment of error, they argue that the trial court erred in denying its motion to permissively intervene pursuant to Civ.R. 24(B). Again, we disagree.

{¶ 15} Appellants sought permissive intervention under Civ.R. 24(B), which provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action * * * when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

{¶ 16} The trial court expressly recognized appellants' concession that they "were not involved in the facts underlying the state's claims." (Decision & Entry at 7.) Based on this concession, the trial court found that appellants had not demonstrated they had a claim or defense in common with the action brought by the attorney general. The trial court also noted appellants' concession that granting their request to intervene might delay these proceedings. *Id.* Given these admissions and the trial court's inherent authority to manage its docket, appellants have not shown that the trial court abused its discretion in denying their request for permissive intervention. Therefore, we overrule appellants' third assignment of error.

{¶ 17} Having overruled appellants' three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

---

[4] This court has no jurisdiction to determine whether the attorney general's representation in this case constitutes a violation of Prof.Cond.R. 1.7, and therefore, we do not address that aspect of appellants' argument.